# SETTLEMENT AGREEMENT

## CONFIDENTIAL SETTLEMENT AGREEMENT
## AND FULL AND FINAL RELEASE OF CLAIMS.

This Confidential Settlement Agreement and Full and Final Release of Claims ("Agreement") is made and entered into by and between Jennifer Yerger (hereinafter referred to as "Plaintiff"), and Liberty Mutual Group Inc. (hereinafter referred to as "Defendant").

**WHEREAS**, Plaintiff filed a lawsuit against Defendant in the United States District Court for the Eastern District of North Carolina, Civil Action No. 5:11-cv-238-D, alleging violations of Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (hereinafter referred to as the "Lawsuit") on behalf of herself and all other allegedly similarly situated individuals and sought to represent such individuals in a collective action pursuant to 29 U.S.C. § 216(b);

**WHEREAS**, the Court has denied Plaintiff's motions to conditionally certify this lawsuit as a collective action;

**WHEREAS**, Defendant denies: (i) the allegations in the Lawsuit, (ii) liability for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*, and (iii) that damages are owed to the Plaintiff. Nonetheless, without admitting or conceding any liability or damages, and to avoid the burden, expense and uncertainty of continuing the Lawsuit, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement;

**WHEREAS**, the aforementioned parties desire to avoid further expense, time, effort and uncertainty in regard to the Lawsuit; and

**WHEREAS**, after balancing the benefits of settlement with the costs, risks, and delay of continued litigation, Plaintiff and her counsel believe the Agreement is in Plaintiff's best interest and represents a fair, reasonable, and adequate resolution of the Lawsuit.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties hereto, intending to be legally bound hereby, agree to the following terms and conditions as full and complete settlement of the Lawsuit:

1. **Consideration from Defendant.**

In full and complete discharge and satisfaction of any and all claims as set out more specifically in paragraph 2 herein, Defendant agrees to the following:

    A.    SETTLEMENT PAYMENTS.

    (1)    Defendant will pay Plaintiff the total gross amount of Eighteen Thousand Five Hundred and 00/100 Dollars ($18,500.00) (the "Settlement Sum"). Payment of the Settlement Sum shall be made by delivery of two checks to Plaintiff's attorney, Robert J. Willis, Esq., as follows: (1) one check, for alleged back pay damages, payable to "Jennifer Yerger" in the gross amount of $9,250.00, minus applicable withholdings for local, state and federal payroll taxes and other legally mandated deductions; and (2) a second check, for alleged liquidated damages, payable to "Jennifer Yerger" in the gross amount of $9,250.00, without withholding of taxes.

    (2)    Defendant shall pay Plaintiff's counsel the sum of Sixty Thousand and 00/100 Dollars ($60,000.00) (the "Attorneys' Fee Payment") for Plaintiff's attorneys' fees and costs in the Lawsuit including court filing fees and costs of retained experts and consultants. The Attorneys' Fee Payment shall be made by delivery to Plaintiff's attorney, Robert J. Willis, Esq., of a check payable to "Jennifer Yerger and the Law Offices of Robert J. Willis."

    (3)    Liberty Mutual will issue an IRS W-2 form to Plaintiff in connection with the first check and an IRS 1099 form to Plaintiff in connection with the second check. Further, Liberty Mutual will issue IRS 1099 forms to both Plaintiff and the Law Offices of Robert J. Willis in

2

connection with the Attorneys' Fee Payment. Plaintiff represents and agrees that she is solely responsible for any taxes that may be determined to be due and owing as a result of the liquidated damages payment made pursuant to this Agreement, and she agrees to indemnify and hold the Company harmless with respect to any and all claims made against the Company by the IRS or any federal, state or local governmental authority for back taxes owed or for statutory withholding amounts, including any penalties, costs or legal fees incurred, relating to the second check issued pursuant to this Agreement, except for any employer contributions to FICA and Medicare that may be assessed to the Company.

(4) Plaintiff agrees that the payments to be made by Defendant under this Agreement constitute adequate consideration and are more than Defendant is required to pay her under its benefit plans, policies and procedures. None of the payments described in this Agreement shall be subject to matching contributions or included as benefits eligible earnings under any benefit plan or policy applicable to Plaintiff.

B. TIME FOR PAYMENTS.

The payments required in paragraph A herein shall be made within a reasonable time not to exceed thirty (30) days following the entry of the Court's Order approving this settlement.

2. **Release.**

Plaintiff, for herself, her heirs, representatives, successors and assigns, does hereby irrevocably and unconditionally release, acquit and forever discharge Defendant, Defendant's past, present and future parent companies, subsidiaries, affiliates, related companies and partnerships, as well as each of their officers, directors, employees, agents, attorneys, representatives, successors, assigns and insurers (hereinafter collective referred to as "the Released Parties"), from any and all claims, complaints, demands, damages, penalties, costs, attorneys' fees or causes of action, suits and liabilities arising at any time up to and including the

3

date this Agreement, including but not limited to claims arising from or otherwise relating to her employment or separation from employment with any of the Released Parties. This release includes any and all claims, demands, grievances, causes of action, suits and liabilities of every kind, character, and description whatsoever, both legal and equitable, under federal or state statutes or common law, whether known or unknown, foreseen or unforeseen, and whether asserted or not, including but not limited to claims under Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*, the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*, the Americans with Disabilities Act of 1990, as amended, and claims under federal, North Carolina or Pennsylvania statutes or common law, and includes but is not limited to claims for compensatory damages, punitive damages, liquidated damages, treble damages, back pay, front pay, emotional distress, attorneys' fees, expenses and costs. This release also includes but is not limited to those claims which were or could have been raised in the Lawsuit, as well as any rights or claims that Plaintiff may have pursuant to Liberty Mutual's Variable Incentive Plan ("VIP") and/or any other compensation, incentive and/or bonus plans in which Plaintiff may claim to have participated, and any rights or claims that Plaintiff may have pursuant to the Liberty Mutual Severance Pay Plan or any other severance plan or agreement in which she may claim to have participated. This Agreement is not intended to waive any claims that may arise after the date this Agreement is executed by Plaintiff. Further, nothing in this Agreement, including the general release of claims set forth in Paragraph 2 or Paragraph 3.(b), shall be construed to have any effect upon:

> (a) Any of the claims that Plaintiff raised in her lawsuit for disability benefits styled Jennifer Yerger v. Liberty Life Assurance Company of Boston, Civil Action No. 6:12-1124-JMC filed in the United States District Court for the District of South Carolina; and,

4

(b) Plaintiff's receipt of benefits for which Plaintiff is otherwise eligible pursuant to the Liberty Mutual Employees' Thrift-Incentive Plan and/or the Liberty Mutual Retirement Benefit Plan.

3. **Plaintiff's Representations.**

(a) Plaintiff represents and warrants that she has not heretofore given, sold, assigned or transferred or purported to give, sell, assign or transfer any claim discussed in this Agreement or any part or portion thereof to anyone else. Plaintiff agrees to indemnify and hold Defendant harmless from and against any claim, demand, damages, debt, liability, account, reckoning, obligation, cost, expense, lien, action and cause of action (including the payment of attorneys' fees and costs actually incurred whether or not litigation be commenced) based on, in connection with, or arising out of any such gift, sale, assignment or transfer or purported or claimed gift, sale, assignment or transfer.

(b) Plaintiff represents that no claim, charge, complaint or action exists in any forum or form brought by Plaintiff or on her behalf against any of the Released Parties, other than the Lawsuit. In the event that any such claim, charge, complaint or action is or has been filed against any of the Released Parties, Plaintiff agrees to waive and hereby waives any and all rights to any monetary relief or monetary recovery therefrom, except as prohibited by law. Should Plaintiff receive any such relief or recovery notwithstanding this Agreement, she will return it to Defendant immediately. By signing this Agreement, Plaintiff expressly acknowledges and agrees: (i) that she has suffered no occupational injuries or diseases arising out of or in connection with her employment with Defendant; and (ii) that she has received all leave to which she was entitled under the Family Medical Leave Act of 1993 (the "FMLA") and any comparable state or local laws.

5

## 4. No Reemployment.

By signing this Agreement, Plaintiff represents and agrees that her employment was on an at-will basis, that her employment with Defendant terminated effective February 10, 2012, and that she will not apply for or otherwise seek employment with any of the Released Parties at any time. Plaintiff acknowledges and agrees that her agreement not to seek future employment as just stated is purely contractual and is in no way involuntary, discriminatory or retaliatory. If Plaintiff seeks employment with any of the Released Parties and is hired, it is hereby acknowledged that such party would have a legitimate and valid reason to discharge her as part of the consideration received by Defendant in connection with this Agreement.

## 5. Confidentiality.

(a) Plaintiff represents that prior to her execution of this Agreement she held it as strictly confidential and did not disclose the terms, fact of, or amounts paid pursuant to this Agreement to anyone other than her spouse, if any, her attorneys, and her financial advisors or tax preparers.

(b) Plaintiff agrees that she will not hereafter disclose the terms, fact of, or amounts paid by Defendant pursuant to this Agreement to anyone other than her spouse, if any, her attorneys, and her financial advisors or tax preparers, all of whom, together with their employees and agents, if any, will be informed of and bound by this confidentiality provision.

(c) Notwithstanding the foregoing, it shall not be a breach of this paragraph to disclose those portions of this Agreement as may be strictly and absolutely necessary: (i) in connection with the preparation of a party's income tax returns or financial records; (ii) in order to satisfy the requirements of the law; (iii) in order to comply with the lawful orders or processes of the courts; or (iv) in order to enforce or comply with this Agreement. Given that the filing and

existence of this lawsuit is public knowledge, it shall not be a breach of this Agreement for Plaintiff, in response to an inquiry about the status of the lawsuit, to say that "It has been resolved."

    (d)    The agreement of confidentiality is an essential part of this Agreement. Plaintiff understands that any disclosure by her in violation of any provision contained in this confidentiality paragraph would cause Defendant injury and damage. Plaintiff agrees that the extent and amount of this injury and damage is difficult or impossible to ascertain and cannot be calculated to any reasonable degree of certainty. Therefore, should Plaintiff breach the terms of any portion of this paragraph 5, Plaintiff agrees that Defendant shall have the right to recover from Plaintiff liquidated damages in the amount of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) per breach, as well as any equitable relief to which Defendant may be entitled. The parties agree that the liquidated damages specified in this paragraph 5 are reasonable to compensate Defendant for the injury and damages arising from a breach by Plaintiff of any portion of this paragraph. Payment of said liquidated damages by Plaintiff shall not entitle Plaintiff to renew any claim she may have against of the Released Parties which is waived or released by this Agreement.

6.    **Confidential Information.**

Plaintiff agrees that she will continue to honor and be bound by all trade secrets, proprietary information, and confidentiality agreements which she executed as an employee of Defendant, and will not disclose or divulge to any person or entity or use for herself or anyone else any confidential financial or business information regarding Defendant or it customers, unless such disclosure is: (i) expressly authorized by Defendant in writing, or (ii) required by law.

7

## 7. Non-Disparagement.

Plaintiff agrees to refrain from making any oral or written statement about any of the Released Parties, their products or services, that is adverse to their business interests or reputation in the marketplace; provided, however that this provision shall not interfere with Plaintiff's ability to communicate (a) regarding the Released Parties with her family, attorneys, and financial and tax advisors; and, (b) with public agencies in the course of an investigation of an administrative charge of employment discrimination or providing information required by a lawful subpoena, a court order or where otherwise mandated by law.

## 8. Court Approval and Dismissal of Lawsuit.

The Parties agree that this Agreement is contingent on the Court's approval of this Agreement and dismissal of the Lawsuit with prejudice. If the Court does not approve this Agreement and dismiss the Lawsuit with prejudice, this Agreement will not be effective, and Defendant will have no obligations under it. The Parties will submit to the Court a joint motion seeking approval of the Parties' settlement under this Agreement. The Parties will cooperate, and take all steps necessary, to effectuate judicial approval of their settlement.

## 9. Expenses of Litigation.

Plaintiff represents and warrants that she will be responsible for satisfaction of her own attorney's fees, expenses, and costs, and understands and agrees that the aforesaid payments shall be deemed to include any and all attorney's fees, expenses, and costs in connection with the Lawsuit and any and all related representation of Plaintiff. Defendant likewise will bear its own costs and attorney's fees.

10. **Nonadmissions Agreement.**

(a) It is understood and agreed that this Agreement is a settlement of disputed claims and that neither the terms nor the fact of the Agreement constitutes an admission of liability or wrongdoing on the part of the Released Parties. The Agreement is not and shall not be construed as an admission by the Released Parties of any acts of liability or fault whatsoever against Plaintiff, or that the Released Parties violated any federal, state or local law, rule, regulation or ordinance or that the actions of the Released Parties were unwarranted, unjustified, retaliatory, discriminatory, or otherwise unlawful or that any of the Released Parties breached any of their policies or procedures. The Released Parties specifically deny and disclaim any liability to Plaintiff and any other person.

(b) In the Lawsuit, Plaintiff asserts that during her employment with Defendant she worked in excess of 40 hours in certain work weeks. She acknowledges and understands that, in consideration of her primary duties as a Senior Premium Auditor, Defendant maintains that she was exempt from the overtime obligations imposed by the FLSA and state law. After consultation with her counsel, and in consideration of all the facts and circumstances surrounding her employment with Defendant, Plaintiff agrees to compromise her claim for unpaid overtime and other relief in exchange for payment of the Settlement Sum. Plaintiff stipulates and agrees that the terms of this Agreement represent a reasonable compromise of a *bona fide* dispute regarding her entitlement to statutory overtime and other relief. Plaintiff further agrees that Defendant may present the terms of this Agreement to a court of competent jurisdiction to the extent necessary to obtain judicial approval of the Agreement.

11. **Authority to Execute.**

Each party represents that the person executing this Agreement on its behalf has been authorized to sign on behalf of the respective party and to bind it to the terms of this Agreement.

12. **Written Notice.**

Any written notice provided for under this Agreement shall be in writing and sent by depositing it with a nationally recognized overnight courier service which obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as follows:

> **Plaintiff:**
> c/o Robert J. Willis
> 5 West Hargett Street, Suite 404
> Raleigh, NC 27601
> Telephone: 919.821.9031
>
> **Defendant:**
> c/o Gregory P. McGuire
> Ogletree Deakins Nash Smoak & Stewart
> 4208 Six Forks Road
> Suite 1100
> Raleigh, North Carolina 27609
> Telephone: 919.787.9700

13. **Governing Law.**

This Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina and any applicable federal law(s).

14. **Severability.**

Should any provision of this Agreement, other than the general release of claims language set forth in paragraph 2, be declared illegal, invalid or unenforceable by a court of competent jurisdiction and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and

10

Case 5:11-cv-00238-D Document 95-1 Filed 03/22/13 Page 11 of 13

effect. If the general release of claims language set forth in paragraph 2 is found by a court of competent jurisdiction to be unenforceable, the parties agree that Defendant shall be permitted to rewrite the Agreement to cure the defect, and Plaintiff shall execute the rewritten agreement upon request by Defendant without entitlement to any additional monies, benefits and/or compensation.

### 15. Merger Agreement.

This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements, whether written or oral, except: (i) if Plaintiff previously entered into any agreement(s) containing provisions governing confidential information, trade secrets, non-competition or non-solicitation, such provisions shall remain in full force and effect; and (ii) the agreement between Yerger and Liberty Life Assurance Company of Boston executed by Yerger on December 11, 2012 and executed by Liberty Life Assurance Company of Boston on January 30, 2013. Any amendment of this Agreement must be in writing and signed by all parties hereto. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party.

### 16. Waiver.

The failure by either party to enforce at any time any of the provisions of this Agreement or to require at any time performance by the other party of any of the provisions herein shall in no way be construed to be a waiver of such provision or to affect the validity thereof.

### 17. Agreement in Counterparts.

This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same

instrument. This Agreement shall not be binding upon either party until executed by the duly authorized representatives of both parties.

18. **Acknowledgment.**

Other than as stated herein, the parties acknowledge that no promise or inducement has been offered for this Agreement and that this Agreement is executed without reliance on any statement of the parties or their representatives. Plaintiff acknowledges that she received a copy of this Agreement and was offered a period of at least twenty-one (21) days to consider it before signing it, that she has read it, that she fully understands its terms and that she knowingly and voluntarily agrees to be bound by it. Defendant advises Plaintiff to consult with an attorney, at Plaintiff's expense, before signing this Agreement, and, by signing below, Plaintiff acknowledges that she has been so advised and that she consulted with attorney Robert J. Willis, Esq. prior to signing this Agreement.

**SIGNATURES:**

**PLAINTIFF:**

By: _____ Date: 3/20/13
Jennifer Yerger

**DEFENDANT:**

By: _____ Date: 3/22/2013
Christine M. Lahey
Vice President and Manager
Employee Relations and H.R. Services

14481283.1 (OGLETREE)